VALENTINE FISCHER v. THE CITY OF CAPE GIRARDEAU, a Municipal Corporation, and H. L. COFFMAN, Appellants.—131 S. W. (2d) 521.

Division One, September 14, 1939.*

*Dearmont, Spradling & Dalton* and *B. Hugh Smith* for appellants.

*Frank Lowry* for respondent.

124

DOUGLAS, J.—Action for personal injuries. From a judgment for plaintiff for $8000, defendants appeal.

Plaintiff alleges that he was employed by the City of Cape Girardeau and was engaged in shoveling crushed rock; that the city was negligent in failing to furnish him with a safe and secure tool in that the scoop shovel supplied him was "old, weak, worn and thin;" that while he was shoveling the crushed rock his shovel came into contact with a rock frozen to the ground; that in order to scoop up this rock he pushed hard with his shovel against it, whereupon the weak and defective shovel, after holding for a moment, suddenly gave way and bent backwards throwing him forward with great force and violence causing him to strike his leg on the handle of his shovel and causing the injuries; that his injuries were directly due to the negligence and carelessness of defendant in furnishing him with an old, worn, thin, weak and unsafe shovel.

The rule is settled that a master must use ordinary and reasonable care to supply safe tools for his servants to use. This general rule has been qualified in some jurisdictions by what is known as the "simple tool" rule. Under the latter rule the general rule does not apply where the tool is of a simple nature easily understood and the defects, if any, open and apparent to the servant. However, we have held that the simple tool rule as applied elsewhere is not the law in this State where a servant never assumes a risk growing out of the negligence of the master. We have decided the rule to be one merely of contributory negligence under which a master may defend on the ground the tool was a simple device and any ordinary person could see the defects. Under such circumstances, use of a tool glaringly defective would show negligence on the part of the servant

in doing a thing which an ordinarily careful and prudent man would not have done so that the servant would be denied relief because of his own negligence. [Williams v. Pryor, 272 Mo. 613, 200 S. W. 53.] Discussing that case in Gray v. Doe Run Lead Co., 331 Mo. 481, 53 S. W. (2d) 877, we said at 491: "In Williams v. Pryor, . . . we held that the so-called simple tool doctrine is in its last analysis 'nothing more than that of contributory negligence,' and although the Williams case was reversed by the Supreme Court of the United States (245 U. S. 43), yet it is still authority for holding that in a Missouri common-law action the simple tool doctrine is but an application of the doctrine of contributory negligence."

On the other hand, even though the duty of furnishing safe tools is imposed on the master, he is not an insurer of the safety of the servant in using the tool furnished. [Compton v. Construction Co., 315 Mo. 1068, 1083, 287 S. W. 474.] In other words the servant must show the failure to furnish a safe tool or, stated differently, the fact that the tool furnished was unsafe caused his injury. "The mere fact there is a negligent defect in an appliance furnished the servant by the master, does not make the master liable for the servant's injury; such defect must be the proximate or legal cause of the injury. . . . 'It is not enough to show an accident and an injury. A causal connection must be established between the accident and the negligence charged, in order to make out a case for the jury. Failing in this, as this plaintiff did, the court should take the case from the jury . . . for the reason that it would have no foundation in law or in fact to rest upon. . . . In other words, the mere occurrence of negligence and injury does not make the defendant liable. There must be a direct connection between the negligent act and the injury, and the negligence must be the proximate cause of the injury.' " [Van Bibber v. Swift & Co., 286 Mo. 317, 333, 228 S. W. 69.]

Applying this rule to the instant case, we find no substantial evidence of any causal connection between the condition of the shovel and the accident. It would seem instead that the manner in which the plaintiff used the shovel so as to be off balance when it went over the rock frozen to the ground must have been the cause of his fall. Surely anyone would know that any shovel would be likely to slip over rock frozen to the ground. The only testimony about the occasion of his injury was given by the plaintiff himself. He said that he was taken to a big pile of rock which had been crushed into pieces about the size of an egg from which a truck was to be loaded; that part of the rock pile was frozen and the shovel could not be pushed into it. He had noticed the edge of his shovel was worn and because of such worn condition "had little prongs on it." A fellow workman was shoveling on top of the pile and the plaintiff was cleaning up the loose rock from the ground. While he was pushing his shovel to fill it, it was stopped by the rock which was frozen to the ground. He ex-

erted pressure on his shovel. His shovel slipped over this piece of rock and went into the pile causing him to fall forward and strike his leg against the handle of the shovel. He describes the casualty in these words: "I was shoveling, that rock being frozen you had to shovel pretty hard. I was shoveling there and all at once my shovel jumped out, as it jumped I fell forward and the shovel snatched in again, when it snatched in, my whole force and weight on this leg fell right up against the shovel handle." After he had hit his leg and had unloaded his shovel he noticed one of the prongs at the right edge of the shovel was bent or curled up about an inch. Although his shovel was in this shape, he finished loading the truck and loaded another one. Then he laid the edge of his shovel on a railroad rail and with a stone pounded down the upturned prong. He continued to use the shovel the rest of the day. Describing his shovel he testified: "It aint no tapered shovel. It had prongs on the end of it. It wasn't square, kinda hollowed out in the middle. The front part of the blade of the shovel was worn back. The edge of the shovel was bent up and I took a rock and straightened it. I used it the next day. I didn't use it as rapidly as I had before. The right edge of the shovel was bent over about an inch after I fell. That was all that I could see wrong with the shovel, I didn't know anything about shovels like that."

The only attempt to explain the cause of the shovel "jumping" was also given by the plaintiff. From an observation of the shovel after the accident, he said: "I seen the shovel was bent up like that, I think that is what caused the shovel to jump when it hit the rock." There were no witnesses to the accident. Except for the plaintiff's testimony, "If it had been a shovel that was fitten to work I don't think it would have bent up, it showed it was worn," there was no evidence that the condition of the shovel made it unsafe, or that its condition could reasonably be excepted to cause it to "jump" and thereby injure the plaintiff.

The jury could only speculate as to what caused the shovel to slip. This it cannot be permitted to do. In Bennett v. Harry Benjamin Equipment Co. (Mo. App.), 214 S. W. 244, the court said: "The cause of the slipping of the boiler iron (which injured the plaintiff) is left, by the evidence, wholly to speculation and conjecture. And to get to the jury it devolved upon plaintiff to get his case out of the realm of speculation and conjecture and plant it upon a solid basis of fact such as to establish prima facie, actionable negligence on the part of the defendant."

The similarity of the facts in the case of Lowe v. Railroad, 265 Mo. 587, 187 S. W. 442, makes it markedly pertinent and persuasive. There, the plaintiff based his cause of action on being furnished a pick which was dull rather than one which had been sharpened. He was employed in taking old ties from a railroad track. After re-

moving the spikes and jacking up the rail he would imbed the point of his pick in the tie and pull it out. In doing this the pick suddenly came out of the tie, causing the plaintiff to fall backwards and be injured. The question was whether such evidence was sufficient to submit the case to the jury. We held that a case is not usually made out by showing the condition of the tool and the resultant injury but that the facts must show the master would have apprehended that the tool used by his servant would by reason of its condition probably result in injury. We found that while a sharp pick might be a little safer than a dull one, it did not follow that a dull one was not reasonably safe. We decided no submissible case had been made. On this point this case is cited with approval in Allen v. Missouri Pacific Ry. Co. (Mo.), 294 S. W. 80; Nolen v. Halpin-Dwyer Const. Co., 225 Mo. App. 224, 29 S. W. (2d) 215; Samuel v. National Bag Co. (Mo. App.), 15 S. W. (2d) 376.

Also in Plefka v. Knapp, Stout & Co., 145 Mo. 316, 46 S. W. 974, we held that the alleged defect in the appliance was a mere condition and not the cause of the accident and as no causal connection was proved between the defect complained of and the injury sustained, no submissible case was made.

In the cases which have upheld awards to plaintiffs because of injuries from unsafe tools we have uniformly found that the evidence showed the causal connection between the condition of the tool and the injury. In Choate v. City of Springfield, 343 Mo. 935, 124 S. W. (2d) 1127, there was abundant evidence that the type of hammer furnished for breaking rock would cause spalls to fly up, thereby causing danger; in Loduca v. St. Louis-S. F. Ry. Co., 315 Mo. 331, 289 S. W. 908, there was clear and pointed evidence that the defective tool was the proximate cause of the injury; in Gray v. Doe Run Lead Co., 331 Mo. 481, 53 S. W. (2d) 877, supra, we held plaintiff's evidence was sufficient to take the case to the jury on the issue of defendant's negligence in failing to supply safe tools; in Nolen v. Halpin-Dwyer Const. Co., 225 Mo. App. 224, 29 S. W. (2d) 215, there was positive evidence that defendant's foreman knew that the tool was defective and unsafe.

Giving to plaintiff every reasonable inference, still we cannot hold that he produced sufficient substantial evidence to make a submissible case. He has not shown that his employer could reasonably anticipate that a shovel with a thin, worn and jagged edge would "jump" more readily than one with a stronger, stouter and thicker edge, or that any such tendency would be likely to cause injury to one using it, or even that the worn condition of his shovel was the cause of his shovel "jumping." His testimony that he thinks that the turned-up prong caused the shovel to "jump" is not evidence, but only speculation and conjecture. As a matter of fact, it is just as probable that his shovel hitting the pile of frozen rock with the force of his fall

caused the prong to turn up as the pressure exerted on the shovel when it was in contact with the rock frozen to the ground. There is certainly no inherent danger in a shovel with a worn edge, and unless it be put to a use not ordinarily intended such condition would not be reasonably anticipated to be a cause of injury. There is no evidence of any directions by the employer as to any particular manner in which the shovel was to be operated in scooping up the rock. It is entirely probable that a worn edge on a shovel might increase the amount of labor expended in doing the work, but that does not necessarily make the shovel an unsafe tool. It is only the duty of the master to furnish tools that are ordinarily and reasonably safe for the character of the work they are intended for. He is not bound to furnish the newest and best. He performs his duty when he furnishes those of ordinary character and of reasonable safety. Absolute safety is unobtainable and, we repeat, employers are not insurers. [Coin v. John H. Talge Lounge Co., 222 Mo. 488, 121 S. W. 1, 25 L. R. A. (N. S.) 1179.] We hold that plaintiff failed to prove either that defendants were guilty of any actionable negligence or that the worn condition of the shovel was the proximate cause of his injury.

For the reasons stated the judgment should be reversed. It is so ordered. All concur, except Hays, P. J., absent.

*NOTE: Opinion filed at May Term, 1939, July 7, 1939, motion for rehearing filed; motion overruled at September Term, September 14, 1939.